Is Noah Dietchweiler against Steve Lucas? Mr. Tagg. May it please the court, my name is Michael Tagg and I represent the plaintiffs in this cause. We had something happen at Waseca High School on January 25, 2013 in the lunchroom. The dean of students, the principal, began their investigation and during the course of the day numerous children were brought in. I think that there were six. Then my client Noah Dietchweiler was brought in as the seventh. During that exchange towards the later part of the day, the dean and or the principal said something to the effect, we know all facts. We know one account was we know all about the drugs at school. You can either admit your guilt and get a suspension or deny it and we will expel you. So let me ask you to separate your presentation, if you can, in two places. First is the time that you're talking about, which I'm going to say under Goss against Lopez sounds like the pre-suspension events. I'm not going to call it a hearing or anything, but just the things that happened before Noah was suspended to alert him to what he was being accused of, what was at stake, to give him a chance to respond. So that's one thing. Then at the other end we have the appeal hearing before the school board, which I'm going to call the post suspension opportunity to do something about this. And under Goss, if you can focus on the pre-suspension, I'm not sure that Goss requires more than that. He is told it's about drugs. He's told, you know, he's a kid, right? He's 15 years old. So he says whoa and he says whatever and he says things that 15 year old kids say. But it's not like he didn't have a chance to say something and before he admits to anything, both his mother and his father, the father by phone, are involved. And why is that defective under Goss? He wasn't told, in our opinion, any of the details as to make him... Right, but where does Goss require that? I certainly see why he might have liked to know it was Ativan or that it was M.M. or this list or all these other things. But he wasn't told what type of drugs. I understand. Right, he wasn't told where the drugs were. He wasn't even told what day. And where does Goss require that? It's supposed to be very informal, right? What do you think Goss means when it says that the student be given an opportunity to respond? What do you think that means? Well, the evidence would be in the context of a meaningful opportunity to respond. You were told or we were told that you got a prescription drug that wasn't yours and you took it at the lunchroom. We were told that another version, of course, it came in later, that you confessed to But they only have to provide an explanation of the evidence they have if the student denies the charges. Are you arguing that Noah's response of whatever constitutes a denial of the charges? But he also said something to the effect that he didn't know anything about any drugs in the exchange. But the last thing I believe he said was whatever. That was in response to the specific inquiry. You can't confess and get a suspension or maintain your innocence and be expelled. And to that that's what the teenage boy said whatever at that time, not having been told any of the details as to what he supposedly did. Now ultimately I think it's significant that there was evidence that they had already filled out a suspension notice that had on it that he was guilty of possession and consumption of drugs. So I think getting back to what he needed to be provided under Gauss, they need to say you took drugs at school, you had drugs that you had in your possession, but at least they need to say something other than we know all about drugs at school, we know all the facts, take a suspension or maintain innocence. And how would he make an informed decision on whether or not he should maintain his innocence when he has no idea what actually he's being charged with doing. By the time his mother is in the room, I guess they call her on her cell phone, and his father's on the phone, haven't some of these details come out? We don't believe any of the details came out. In fact, the detail that apparently came out that ultimately they recanted upon at the review hearing was even the day that this supposedly occurred. I understand that, that's why I'm trying to separate these two out analytically. So more requirements by the time we have the review hearing. That's correct. And I think that the sufficiency of the pre-suspension dovetails in to are you going to be given a fair opportunity to rebut some of these things. But I think under Gauss, the whole concept is, and I believe articulations by many of the courts after there, there needs to be a meaningful opportunity. You can't say, well, Noah's already guilty, we have the suspension review here, we know all the facts, it's late to the day, either admit or suspend, or deny and expel. And then, if I may, I'll move on to the next segment. Yeah, why don't you do the other two. So then, as I think would be expected, he gets home, dad gets home, and there's hectopeng. So Noah at that time indicates that I didn't know what they were talking about, I was scared, I could either take a suspension or expulsion, I didn't take drugs. So his father essentially says, we'll go spend a lot of money, and we can resolve this issue once and for all, and they do. They go get scientific evidence that Noah did not consume drugs, therefore the basis of the suspension, we know, is not correct. Was any evidence ever presented about how long Ativan stays in the system? Yes. It would have been between three days, I think, and seven or eight days. So I take it it was uncontested, the results of these tests that the father procured, established no Ativan consumption for at least that period, four to seven days? Did they ever contest that? There's no conflicting evidence, of course, in the proceedings. We did a request to admit, and there was no contest for that. It's hard to say what they were thinking. Well, in this record, though, I'm just trying to be... They've waived any right to say that the test would miss it, or it wasn't that sensitive, or anything like that? That's correct. So armed with that evidence, this makes it a much different case than he said, she said, or the administrators versus what the state said. Well, they eventually amend the charge to say, well, we don't think he consumed it, but we think he possessed it, right? Correct. But of course, they didn't tell us that until the suspension hearing, even though we asked. And had they told us that, evidence was adduced in pretrial discovery that the prescription that the boy brought on the 25th could not have been filled on the day that, allegedly, he confessed to having, again, taken a concentrate. Right. But was there any evidence that there were other prescriptions? Ativan's pretty commonly prescribed. So yes, maybe that prescription was filled Thursday night, but what about excluding the possibility that it was a different one? There was no specific evidence relative to anyone else other than M.M. bringing Ativan to school at any time. And any other way M.M. could have gotten that many pills? Correct, because I think that the testimony was they had to fill the prescription because his mother was out. So, of course, we didn't have a meaningful opportunity to present any of that because we weren't aware of that situation. So, I think that, you know, obviously this is a lengthy brief because of the details, but in summary, what our brief outlines is every step along the way where we wanted to present something concrete that would have allowed a correction of, at best, a hasty conclusion at the end of a Friday, that we know everything, you're on a list that ultimately was explained as owing for lunch money. Well, there was another list, wasn't it, showing him as one of the people that M.M. gave the drugs to? That was a list that they had M.M. write out, correct. Correct. And, of course, there's testimony as to the explanation as to why Inouye said that came into existence. Okay, thank you. Okay, thank you very much. Ms. Goggin-Ward. Good morning. My name is Sherry Goggin-Ward. I represent the defendants at Belize in this case, including the Iroquois County Community School District Number 9 and its superintendent. The plaintiffs Noah D. Twyler and his parents have appealed an order of the U.S. District Court of the Central District of Illinois as to Noah's claim that defendants know his rights were violated under the 14th Amendment of the U.S. Constitution. The U.S. District Court also dismissed, without prejudice, plaintiffs' pendant state claims. Plaintiff appellants have not complied, it's our belief, with multiple U.S. District Court local rules, but also appellate procedure, making it somewhat difficult to distill the issues that they're arguing. But the District Court didn't rely on that. We usually go with whatever the District Court wanted to do. Correct, Judge. And the District Court, in fact, decided, obviously in defendants' favor, that defendants did not violate Noah's procedural due process rights when he was suspended. It wasn't relying on local rules, though. My concern is with the second hearing, to be honest. If you could focus on how this was a fair hearing without giving him notice that he was actually being accused of having the drugs on the 24th of January, not the 25th, and that he was actually being accused, not of ingesting them, but of simply possessing, I don't know how you can prepare a defense without knowing basic facts like that. If you look at it, I think Your Honor divided the two procedures of the pre-suspension hearing as well as the post. Right, and I'm asking you to focus right now on the latter of the two. For the post-suspension hearing, Your Honor, initially Noah had gotten oral notice that he was charged with possessing and ingesting drugs on school property. So it wasn't exclusive of ingesting drugs on school property. Then, after he used the one word, whatever, then, of course, it's our understanding that under GOSS, he's not required to be actually presented with the actual evidence of what was against him. But that's for the pre-suspension. Yes. Then you suspend him. Correct. Now, ten days later or so, a week and a half later, he has the full hearing, the post-suspension hearing, which has the capability of erasing from his student record the fact that he's been suspended, and such facts are sometimes regarded negatively by colleges, by employers, by others. So he's not told at the post-suspension hearing that the day has changed? I mean, this seems significant to me. Your Honor, for the post-suspension hearing, the only thing that's required by the Supreme Court under GOSS is, once again, the notice of the charges against him and whether or not he denies it. And it's a bad notice. That was not notice. For that, however, the father then indicated that he wished to appeal it. So then that notice is then appealed to the full school board for a review of the charges against him, and the school board was presented with, and the petitioner and the plaintiff, in this case, was afforded a full hearing. But you're not answering the question. I mean, when he's told... I mean, look, we could have this in a drug case. If you had a case about, you know, you distributed drugs on November the 9th, and then at the trial, somebody says, so actually, we didn't mean the 9th. We meant the 8th. Maybe you have an alibi. Maybe you were out of town. I mean, all sorts of differences. And, in fact, he has shown, he has suggested that there's evidence to show that the 24th wasn't possible. Your Honor, in looking at the evidence that was actually deduced at this hearing through cross-examination, there was... And he's accused of the 24th at the hearing. It was an accusation against him that he possessed drugs and ingested drugs, understandably, on the 24th. On the 24th. That is correct, Your Honor. Which was not part of the notice that he ever got. I don't think that the school board found that there was any evidence one way or the other on the 23rd and that it didn't matter to them. It was the school board's decision that Noah possessed drugs on the 25th. I'm sorry, on the 24th of January of 2013. What, in your view, does the Constitution require for a post-suspension school board hearing? You know, Your Honor, there's actually no cases cited by either side in this case as to the requirements that are outlined under the post-suspension hearing. What gaussed in the case and what was followed by the school district in this case is that he was not only given oral notice of the charges against him, which was deduced by the school board to be more than what the... The notice needs to be accurate. I'm thinking of cases like Superintendent against Hill, which applied to prison disciplinary proceedings. And this has got to be at least as good as a prison disciplinary proceeding, which is a fairly low standard. But you've got to know, what did you do? On what day did you do it? You know, just the basics. You can't just call it notice and have facts that have no relation to what you're actually pursuing. You see, it's very Alice in Wonderland. And I understand the concern, but I also believe that the school board found that the evidence was, regardless of petitioner... or plaintiff's arguments in this case, that Noah, in fact, possessed drugs in school on the 24th. I think what Your Honor has pointed out is that the school board has reviewed all of the evidence that was presented in the case and they indicated based on... You mean the 24th or the 25th? Because the original charge was the 25th. And then they changed it without telling him they were going to change it to the 24th. I apologize, Your Honor. The 25th is what... The day that this all happened at school, January 25th of 2013, when M.M. was passing out pills at the lunch period. It was determined by the school board after the pre-suspension hearing and now during the post-suspension hearing that he possessed drugs on that day. Now, whether or not it was accepted by the plaintiffs in this case, that was the evidence that they reviewed. And what I believe that makes it even more of a due process... requirements that they followed in this case and the school board examined was that they took a look at all of the evidence in the case. They took a look at petitioners' or plaintiffs' evidence that indicated he didn't ingest drugs, he didn't ingest the Ativan because the drug screen came back clean. However, based on all of the totality of the evidence that was presented, through not only notice of possessing drugs... And they never found any drugs on him, even though they had him in the office for much of the afternoon on the 25th. For this case, it wasn't looked for, Your Honor. I believe if Your Honor remembers for M.M., he also denied having drugs. And when he denied having drugs, they then requested... He found them in his sock, I remember that. Correct. There were two pills found in his sock. So his credibility was called into question. But not Noah's. Whose fault is it that they don't ask Noah, do you have any drugs with you right now? Well, I believe that when Noah indicated the answer of whatever, then that constituted as not a denial to them. And that he then accepted the suspension and signed the piece of paper after talking to his mother, getting written notice. And then, once again, Your Honor, however, focusing on your original question that indicated on the 25th of 2013, the school board took a look at all of the evidence. They took a look and weighed all of the factors and the credibility of the witnesses. They indicated yes, Noah did in fact possess drugs on school property on January 25th of 2013. But no, because of the evidence presented, he in fact did not adjust the Ativan, which did not show up in his bloodstream. But based on the totality of the evidence, where he was allowed to call his own witnesses and all of this testimony, he presented the evidence and this is what the school board decided. And under Goss v. Lopez, not only did he get just oral notice and then an admission or not even a denial of the charges against him, but then he actually got a full-blown hearing. He got to be represented by counsel. His father was a criminal and school attorney who was contacted during the pre-suspension hearing when his mother was presented and additional evidence was discussed with them. And after that, before they were leaving the room, they said, no, you have to sign that you accept your suspension. And that he then did so and had to make up his homework. He of course says he was coerced into this and that it was the only way to leave the room because they had just given him this binary choice of expulsion or suspension. Not a choice of, you know, if you're denying this then we'll move on to a further investigation. However, his mother and father... There has to be a choice other than just expulsion or suspension. That's true. He could have denied the charges and then... They didn't give him that opportunity, though. Oh, I think they absolutely gave him that opportunity when they were questioning him initially and bringing him down to the office. He could have absolutely said, I didn't do anything. When he says, whoa, what are you talking about? He says his first response includes the word whoa, I remember. It does, Your Honor. I think he denies it. Is there any evidence in the pre-suspension give and take that they had an open mind about the outcome? Absolutely. I mean, if you look at both... If you're going beyond looking at a light most favorable to the plaintiff in this case and you actually look at the testimony of Bunting and Lucas, much more was discussed and told to Noah before he used the word whatever when he was charged with possessing and consuming drugs on school property. So, obviously, the U.S. District Court only took Noah's testimony at face value as opposed to actually examining Bunting and Lucas's testimony that indicated they went through an entire array of evidence with him, including what other students have indicated, what MM indicated, and other circumstances surrounding the drugs. If we're taking the facts in the light most favorable to Noah, that's where we are. I could certainly imagine you arguing that at a trial, but Noah doesn't portray it that way. I understand, and that's why the District Court... And we have to take it Noah's way. Absolutely, and that's exactly what the District Court did when Judge Baker examined all of the evidence. Under the GOSS standard, he was simply required to be told what he was charged with. He was charged with possessing and taking drugs at school. And I know after the indication of him saying, look, you get suspended for 10 days if you admit this, or you face the possibility of greater consequences, including expulsion if you do not, and you're later found out to have lied about that, which I believe is the testimony, then he hadn't even yet been suspended at that point. Then he goes into this... He remains in the office, and his mother is called. Then his mother is called in, and she's also explained the charges that are against Noah. She doesn't indicate that there's any denial. She says, no, no, no, we have to call my husband, who is an attorney. The father is called. I think we have your point. But I'm wondering if all the students whose names appeared on the list and then had his position, were they all suspended? No, they were not. There were specific two examples where there was a denial of the charges even in a petitioner's brief. The minor by the name of D.P. also had the exact same thing, and he denied the charges, and he was not suspended for 10 days. Okay, thank you very much. I think your time may have expired, but because everybody's running over, I'll give you a minute to rebut. The one point I want to make is that counsel indicated that the school board considered all the evidence and made a decision that he possessed drugs on the 25th. I don't know how she could get that from this record, because every school board member we questioned couldn't remember anything. I think one of them, there were 140 some odd different, I don't recollect, or I don't know. So to say that there was a thorough review of the evidence and the school board member said, we found something happened on the 25th, I think is a stretch on this record. All right, thank you. Thank you to both counsel. We'll take the case under advisement. The court will be in recess.